Thorne, McFarlane & Co. *versus* Warfflein.

1. In order to render admissible parol evidence to vary the terms of a written agreement on the ground of fraud in its procurement, there must be evidence of fraud other than than that which may be derived from the mere difference in the parol and written terms.

2. The mere breach of a verbal agreement, made at the time of signing a written contract, whereby one party promised the other to perform certain stipulations not provided for in the writing, is not such fraud as will let in parol evidence to control the written agreement.

3. By writing under seal, A. agreed to sell to B. a tract of land, B to "give a bond and mortgage for balance of purchase money." In an action of trespass by A. against B. and his vendees to recover double damages for cutting timber on the tract, the plaintiff testified that immediately prior to signing the paper he insisted that no timber should be cut until payment of the entire purchase money, and that the defendant B. verbally agreed to insert that condition in his purchase money bond and mortgage, but afterwards refused so to do; and the court instructed the jury that if, under all the evidence, they found that B. obtained the written agreement by fraud, the verdict should be for the plaintiff:—*Held*, to be error. There was no evidence to warrant the submission of the question whether the written agreement was fraudulently obtained.

May 9th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Sullivan county :* Of January Term 1882, No. 430.

Trespass, by John Warfflein against Thorne, McFarlane & Co. and Michael Meylert. The action, as originally brought, and declared upon in the narr., was to recover damages at common law for entering and cutting timber. Plea, not guilty. Subsequently, the plaintiff, by leave of the court, filed an amended narr., claiming double and treble damages under the act of March 29th 1824, for cutting and removing timber.

[Thorne, McFarlane and Co. *v.* Warfflein.]

Exception. (First assignment of error). The defendants then pleaded *liberum tenementum.* The pleadings were not set forth in full in the printed record.

On the trial, before INGHAM, P. J., the plaintiff proved title in himself, and the cutting and removing of timber by the defendants, Thorne, McFarlane & Co., in 1878, and rested.

The defendants, Thorne, McFarlane & Co., claimed under a purchase of the timber from the defendant, Meylert.

Meylert, to show a purchase by him from the plaintiff of the equitable title to the tract, put in evidence, inter alia, the following letters :

June 13th 1877.

MICH. MEYLERT, Esq.,

Dear Sir :—I will sell you now the 98 acres of land, and the two town lots for $1,400. Term of payment you may fix yourself to suit, within eighteen months, and lawful interest. Please let me know soon. Respectfully yours,

JOHN WARFFLEIN.

July 4th 1877.

MICH. MEYLERT, Esq.,

Dear Sir :—In reply to your favor of June 30th, I do not intend to sell the 98 acres of land and the two town lots for less than $1,400. If you would want longer time for payment, I will extent it. The time selling that land might not be far, as all the land around mine is sold and the Tannery Company will be obliged to get it and pay a larger price, for which you will have the best change then. Respectfully yours,

JOHN WARFFLEIN.

Laporte, Sullivan Co., Pa., July 16th 1877.

JOHN WARFFLEIN, Esq.,

Dear Sir :—Your letters of June 30th and July 4th are received and contents noted. I accept the offer as contained in your letter of July 4th, and expected to have seen you on last Thursday in Philadelphia and made formal contract, as there were some points which I thought we better discuss a little, but we shall be able to fix it satisfactory when we meet, and I will try and give you longer notice, and in the meantime my acceptance of your offer will be sufficient for us. I presume I shall be down again before the month is out.

Respectfully yours, MICHAEL MEYLERT.

Also the following agreement or receipt, executed at a meeting of the parties :

[Thorne, McFarlane and Co. v. Warfflein.]

Received, Jenkintown, August 21st 1877, of Michael Meylert, one hundred and ninety dollars on account of two town lots in Laporte, and ninety-eight acres of land in Laporte township, and it is hereby understood and agreed that said Meylert will give bond and mortgage for balance of purchase money, payable in three equal annual payments from date, with interest annually on the whole sum unpaid; and that said Warfflein will give deed of same date for said lots, each to be dated September 1st, 1877. So agreed, August 21st 1877. Witness our hands and seals. (Balance of purchase money is twelve hundred and ten dollars.)

So agreed day last above written.

JOHN WARFFLEIN. [SEAL.]<br>MICHAEL MEYLERT. [SEAL.]

The defendant, Meylert, testified that he soon afterward sent to the plaintiff a blank deed for the premises, to be signed by plaintiff, and a bond and mortgage in the usual form, duly executed by himself for the balance of purchase money, which plaintiff refused to sign or accept, and which he returned with the following letter, inclosing a form of bond and mortgage containing other conditions, viz.:

MICHAEL MEYLERT, Esq.,

Dear Sir:—Yours under date of the 5th inst. duly received, together with paper for property, etc. In reply, I would say that it is usual, and the custom here, to take a mortgage and bond like the inclosed, which you will please have filled and acknowledged and return to me, when I will, together with my wife, acknowledge deed and forward to you, provided you send me a written condition that you will not remove or cut the timber off the land until you may dispose of the land to our mutual advantage, or until the mortgage is extinguished.

Respectfully yours,    JOHN WARFFLEIN.

P. S.—My wife's name is Amelia Warfflein.

Meylert had previously sold the timber on the tract to the defendants, Thorne McFarlane & Co.

In rebuttal, the plaintiff's counsel made the following offer, viz.: " To prove by John Warfflein that the paper dated August 21st 1877, was given by him as a receipt, and at that time it was expressly agreed and understood between Michael Meylert and John Warfflein, that no timber should be cut on the said land until the mortgage was satisfied, or the purchase money paid; that Mr. Warfflein refused to sell the land unless these stipulations were expressly reserved in the mortgage, to be given by Michael Meylert to John Warfflein for these lots; that

[Thorne, McFarlane and Co. *v.* Warfflein.]

an unfair and fraudulent advantage was taken of Mr. Warfflein by Michael Meylert, in procuring the paper offered in defense, which Mr. Warfflein signed as a receipt, and which does not contain a reservation of the timber, as was expressly agreed and understood when the agreement was made."

Objected to, on the ground that parol evidence is not admissible, under this offer, to vary or contradict the written agreement. Objection overruled; exception. (Third assignment of error.)

The plaintiff's testimony, under this offer, was as follows:

"The paper does not state the whole agreement. Mr. Meylert telegraphed me to go and meet him. I met him. I said: Mr. Meylert, I will keep my offer as regards price, but the timber must not be cut off of it, and that must be put in the bond and mortgage. Mr. Meylert said: I don't know about that. I said: Otherwise, I don't sell it. I must be secure. I have a family, and I must look out for them that every cent is right. If the timber is cut off, the land is worth nothing. Mr. Meylert said: You are mistaken about that. There is some mineral under it. I said: I don't look for the mineral; I must be secure, otherwise I don't sell it. Mr. Meylert said: I will give you a bond and mortgage that not any timber be cut off; or if I sell it, I give you full satisfaction. I said: Then it is all right; you shall have it. We went on the other side. Mr. Meylert gave me a draft for $200. He asked me for $10 to bring him home. I gave him those $10. Then Mr. Meylert said: I write a receipt. We went in the office in the station house. Then Mr. Meylert asked me what time I will give him. I say, three years. Then Mr. Meylert wrote a receipt and I sign it.

"We went outside, set down on the bench and spoke of different things, farming and gardening, etc. When the train came in I went over on the other side by Mr. Meylert and said: Mr. Meylert, don't forget to put in the bond and mortgage about the timber. Mr. Meylert said no. The paper he wrote was a receipt. Mr. Meylert sent me a bond and mortgage on the 5th day of September 1877; also sent a deed for me to sign. I did not sign the deed because he did not do as he promised to do: to put into the bond and mortgage that he would not cut any timber until the bond and mortgage is satisfied. I returned him a blank bond and mortgage to fill it up in the proper way."

Meylert, in sur-rebuttal, testified: "Not one word was said by Warfflein or myself about the timber on the land at the time the agreement was made. I bought this land for the sole purpose of the timber. The first I had any knowledge that Warfflein reserved the timber was when he sent this bond and mortgage back."

The defendant presented, inter alia, the following points:—

[Thorne, McFarlane and Co. v. Warfflein.}

1. That the letters and agreement in evidence between John Warfflein and Michael Meylert clearly show that an agreement was entered into between the said John Warfflein and Michael Meylert, whereby the said John Warfflein was to sell the land described in the plaintiff's narr. to the said Michael Meylert, and that by the law after such agreement was entered into the said Michael Meylert became the equitable owner of said land, and the said John Warfflein merely held the legal title thereto to enable him to enforce the payment of said purchase money ; and, consequently, he had no such ownership of the land as would entitle him to recover in this action, and that their verdict must be for the defendant.

Answer. We answer that so far as the written evidence goes this is affirmed. But the oral as well as the written evidence must be weighed; and if the jury find from all the evidence in the case as a matter of fact that the vendee (Michael Meylert) obtained the agreement fraudulently, it is void. (Sixth assignment of error.)

2. That if the jury believe that John Warfflein wrote the letters placed in evidence, and offered the land mentioned for fourteen hundred dollars, and that Michael Meylert accepted said offer by letter, and that the said John Warfflein and Michael Meylert executed the agreement, dated August 21st 1877, placed in evidence, then the plaintiff did not have such a title to the said land as would enable him to maintain this action, and their verdict must be for the defendants.

Answer. Affirmed, with the qualification attached to our answer to the first point in regard to oral testimony.

4. That there being a written contract between John Warfflein and Michael Meylert in regard to the sale of land in controversy, that the contract must stand as the agreement of the parties, unless fraud or mistake is clearly proven by preponderating testimony, and that where one party swears one way and the other the other, there can be no such preponderating testimony.

Answer. We do not affirm the whole of this point. The credibility of witnesses, including parties to actions, is for the jury ; and this evidence is submitted to the jury. With this modification we affirm the point.

Verdict and judgment for the plaintiff for $1,534.64. The defendants took this writ of error, assigning for error, inter alia, the amendment of the form of action; the admission of the plaintiff's offer of parol evidence to vary the written agreement ; and the answers to their points, as above.

*E. M. Dunham* and *A. Logan Grim*, for the plaintiffs in error.—Neither in the offer nor in the evidence given under it

was there any allegation of such fraud as would warrant the introduction of parol evidence to vary the written agreement or the submission of the question of fraud to the jury. Miller *v.* Fichthorn, 7 Casey 252. Assuming the evidence to be true, it simply amounts to a vague promise by Meylert, not fulfilled. This could not, in any case, affect the other defendants.

*Ellery P. Ingham* (*Rand & Patton* with him), for defendant in error.—The admission of the parol evidence to affect the writing was amply justified under the authorities: Hurst's lessee *v.* Kirkbride, 1 Binney 616; s. c. 1 Yeates 139; Miller *v.* Henderson, 10 S. & R. 290; Lippincott *v.* Whitman, 2 Norris 247; Greenawalt *v.* Kohne, 4 Nor. 375.

Mr. Justice GREEN delivered the opinion of the court, October 5th 1882.

The chief contention in this case was upon the admissibility of parol evidence to control and alter the written agreement of the parties. Certain correspondence had passed between Warfflein, the vendor of the land in question, and Meylert, the purchaser, which resulted in an offer by Warfflein to sell the 98 acres and the two town lots for $1,400, the terms of payment to be fixed by Meylert within eighteen months, with the expression of a willingness to enlarge the time if desired, and an acceptance of the offer by Meylert. Then followed a letter and telegram merely fixing a time to meet. On August 21st 1877, the parties met, in pursuance of appointment, at Jenkintown station, on the North Penn railroad, and there concluded their bargain. Meylert paid Warfflein one hundred and ninety dollars on account of the purchase money, and a written receipt was given for it, and in this receipt the terms of the contract were expressed. It is in the following words: "Received, Jenkintown, August 21st, 1877, of Michael Meylert, one hundred and ninety dollars on account of two town lots in Laporte, and ninety-eight acres of land in Laporte township; and it is hereby understood and agreed that said Meylert will give bond and mortgage for balance of purchase money, payable in three equal annual payments from date, with interest annually on the whole sum unpaid, and that said Warfflein will give deed of same date for said lots, each to be dated September 1st 1877. So agreed August 21st 1877. Witness our hands and seals. (Balance of purchase money is twelve hundred and ten dollars.) So agreed day last above written.

" JOHN WARFFLEIN.     [SEAL.]

MICHAEL MEYLERT.     [SEAL.] "

[Thorne, McFarlane and Co. *v.* Warfflein.]

The learned judge of the court below charged that this paper was more than a mere receipt; that it was an agreement to sell the land referred to, and if not varied by parol testimony, it afforded a complete defense to the action.   He held, however, that parol testimony was admissible of terms not contained in the paper, and which changed it materially, and he left to the jury the question of the effect of this testimony upon the written agreement, on the ground of fraud in procuring the plaintiff's signature.   The learned judge states the respective contentions of the parties, among the rest that it was claimed for the plaintiff that his signature was obtained by means of an assurance given by Meylert to the plaintiff that the timber should not be cut till the purchase money was paid, and that the mortgage to be given should contain such a provision.   He then defines the meaning of fraud, and refers to the witnesses, saying that their credibility is for the jury, and instructs them to weigh the whole testimony, and find a verdict in accordance therewith.   He does not point out in what view of the testimony a fraud may be found, nor does he at all pass upon the sufficiency of the plaintiff's testimony to establish a fraud, accepting it all as absolute verity.   He was practically asked to do this by the defendant's first and fourth points, but responded to them by simply leaving to the jury generally the question whether the agreement was obtained by fraud.   This leads us to consider the effect which may be legally attached to the plaintiff's testimony, upon the theory of its conceded truthfulness.   Prior to the date of the receipt of August 21st 1877, Warfflein had, by letters of June 13th and July 4th 1877, offered to sell to Meylert the land in question, at a fixed price of $1,400.   In neither of these letters, nor in the paper of August 21st, was anything said about leaving the timber stand till the purchase money was paid; in fact, the subject of timber was not even alluded to.   On the trial, the plaintiff, under objection and exception, testified that, when the paper of August 21st was executed, he told Meylert he would keep his offer as regards price, but the timber must not be cut off, and that must be put in the bond and mortgage; otherwise he would not sell it; that Meylert said he would give a bond and mortgage that no timber would be cut off; or if he sold it, he would give full satisfaction, to which plaintiff replied, "Then it is all right; you shall have it."   The receipt was then written and signed.   When the train left, plaintiff said: "Mr. Meylert, don't forget to put in the bond and mortgage about the timber." Mr. Meylert said "No."   Subsequently, Meylert sent to the plaintiff a deed for him to execute, and an executed bond and mortgage, which were returned because the latter did not contain the promised provision in regard to the timber.   The foregoing is the full substance of the plaintiff's

testimony on this subject.   It was flatly denied by Meylert, who testified that nothing was said about the timber.   The credibility of the witnesses was for the jury, but was the plaintiff's testimony sufficient to defeat the written agreement ?   Of course, under this evidence it cannot be said there was any actual fraud used in obtaining the plaintiff's signature.   There was no misrepresentation or deceit.   The defendant, Meylert, was asked to put in the bond and mortgage a provision that the timber should not be cut till the purchase money was paid.   He promised to do so, but did not keep his promise.   What he was to do was to be done in the future.   The provision was not to be included in the agreement of sale.   It was not to be a part of that instrument, and, therefore it was not omitted from it.   There was neither fraud, accident, nor mistake in leaving it out of the agreement.   The plaintiff chose to sign the paper as it was, without requiring any stipulation in regard to the timber to be inserted either in the agreement of sale or in the deed for the property.   He was satisfied with a promise that it should be contained in a mortgage to be subsequently given by Meylert to himself for the purchase money.   When he signed the agreement he obtained all that he asked, to wit : a promise.   It is true the promise was not performed, and, no doubt, the plaintiff was disappointed in his expectation.   But the same would be true of an unperformed promise to pay the purchase money at a definite time in the future, yet that would be no reason for avoiding an absolute agreement for the sale of land.   The plaintiff does not say that he was inveigled into signing the agreement by means of the promise.   He simply says he did sign when the promise was made.   The case is not so strong as Martin *v.* Berens, 17 P. F. S. 459.   There the affidavit of defence alleged, that before and after the time of the making of the lease in question, " the plaintiff agreed with the defendant as part of the said lease and agreement," that there should be no liability for rent in case the premises were burnt during the term.   Yet this was held not sufficient to defeat the clear terms of the written lease.   It is not enough that there are parol stipulations contradictory of a written agreement, in order to change its legal effect.   There must be fraud, accident or mistake, and the evidence of either must be clear, precise and indubitable.   We have gone very far in permitting parol contemporaneous evidence to defeat written instruments.   To go further would be to practically abrogate the rule.   The distinctions are fully and clearly set forth in the opinion of Mr. Justice WILLIAMS, in the case of Martin *v.* Berens, supra, and as there stated, they meet with our approval.   He sums up the subject in the following terse and effective words, to which we agree : " Where parties without any fraud or mistake have deliberately

[Thorne, McFarlane and Co. *v.* Warfflein.]

put their engagements in writing, the law declares the writing to be not only the best but the only evidence of their agreement, and we are not disposed to relax the rule. It has been found to be a wholesome one, and now that parties are allowed to testify in their own behalf, the necessity of adhering strictly to it is all the more imperative." We cannot agree that it is proper to throw the whole case into the jury-box on the ground of fraud, simply because one of two parties to a written contract testifies that there were parol stipulations contradictory to the terms of the writing, agreed to at the same time. There must be evidence of fraud other than that which may be derived from the mere difference in the parol and written terms. We can find no such evidence in the present case, and we are, therefore, of opinion that the learned court below was in error in leaving the question of fraud to the jury. Upon the views here expressed, the sixth and seventh assignments of error are sustained, and on them the case is reversed. As neither the narr. originally filed, nor the amended narr. is printed, we cannot know anything of the merits of the first assignment. The second assignment is not sustained, nor is the third, for the reason that the court could not know whether the testimony would come up to the full terms of the offer of proof. The offer was to prove that a fraudulent advantage was taken of the plaintiff in procuring his signature to the agreement, and that it was expressly agreed that the reservation of the timber was to be contained in the receipt. There was no such proof, but that could be only discovered after the testimony was in. There is no merit in the fourth assignment, nor in the fifth. It was clearly proper to show that Warfflein had not received the purchase money, since if he had he would have received the full consideration of the agreement, and would have had no cause of action. The eighth, tenth and eleventh assignments are not sustained, because there was evidence of the matters complained of in them. As to the ninth assignment, the substance of the defendant's fourth point was affirmed, and the remainder of the answer related only to the credibility of witnesses, which, of course, was for the jury. The last clause of the point is not correctly expressed. It would be true if the parties were equally credible, and there were no other circumstances affecting the testimony of either, but these are important qualifications.

Judgment reversed.