## Hoffman, Appellant, *v.* Bloomsburg & Sullivan R. R.

[Marked to be reported.]

*Railroad—Right of way—Agreement with landowner as to the release of damages—Cost of fencing.*

A landowner agreed with a railroad company as follows: " I will release to the company which undertakes to construct such road the right of way of lawful width through my land in Orange township, Columbia county, Pennsylvania. The damages to be assessed when the road is located, and the amount of such damages to be paid in stock in said railroad. Cost of fencing not included in damages, provided no damage is done to the buildings, race or water power." *Held*, (1) that the agreement meant that if no damage was done to the building, race or water power no damage was to be allowed for the cost of fencing; (2) that the writing was a release of the right of way and not merely a proposal to be followed by an agreement.

*Eminent domain—Measure of damages.*

The correct rule in estimating damages for land taken by a railroad company is the difference in value of the entire property or tract as a whole, unaffected as it was before the railroad was laid upon it, and as it is affected by the railroad after it is finished or completed. Evidence of

the value of the property at an intermediate time and before the completion of the railroad is inadmissible.

### Damages—Mill—Compensation for delay—Evidence.

Where a mill owner has received from a railroad contractor compensation for delay in the operation of his mills during the construction of the railroad, the owner will not be permitted, in condemnation proceedings, to offer evidence of the damage arising from the delay.

In ascertaining the damages caused to the water power of a mill by the construction of a railroad, it is proper to admit evidence of the location and dimensions of an old race and a new one substituted in its place, and of the knowledge and acquiescence of the owner in the construction by the railroad of a new dam outside of the right of way in place of a portion of the old one; also evidence of leakage in the old dam, and the cost of repairing it.

### Railroads—Acceptance of contract—Delay.

The fulfillment of that which a promisor stipulates for is the best proof of assent, and notice need not be given unless the circumstances are such that the promisor cannot inform himself by inquiry.

A landowner agreed in writing to release a right of way to a railroad company, and accept damages assessed in stock. Subsequently the board of directors of the railroad company passed a resolution accepting all such agreements for right of way, and the company began work upon the right of way through the owner's farm, and made considerable expenditures of money. *Held*, (1) that notice of acceptance of the contract had been sufficiently declared; and (2) that such acceptance was not too late by reason of a delay of over three years.

### Time of assessment of damages—" Located."

Where a landowner releases a right of way, " the damages to be assessed when the road is located," the damages are to be assessed at the time of the construction of the road, if the testimony shows that the damages claimed were only ascertainable upon the construction of the road. In such a case the word " located " is not to be given its technical meaning.

### Parol evidence to vary written agreement.

Where a written contract plainly expresses the deliberate intent of the parties without any uncertainty, and indicates thus the whole engagement. it cannot be contradicted or varied by parol testimony, except (1) where there was fraud, accident or mistake in the creation of the instrument itself; (2) where there has been an attempt to make a fraudulent use of the instrument in violation of a promise or agreement made at the time the instrument was signed, and without which it would not have been executed.

A landowner released a right of way through his land in Orange township. The agreement provided that damages should be assessed when the road was located, but cost of fencing was not included in damages, provided no damage was done " to the buildings, race or water power." Plaintiff claimed that when the paper was signed the understanding was that the railroad was to be on the west side of the creek.

The evidence showed that plaintiff owned on the west side of the creek a narrow strip of land, insufficient for the width of the right of way, and that this strip was in Mount Pleasant township, while his mills, buildings and farm were on the east side of the creek. *Held* that parol evidence to vary the written agreement should not be admitted.

*Agreement to take stock for land damages.*

Where a landowner agrees to take stock in a railroad company for the damages caused by the construction of a railroad through his land, he must take the stock at its par value.

*Estoppel—Admission of counsel.*

An erroneous admission of counsel in regard to the construction of a contract as a matter of law, upon a former trial, will not estop the client from denying it in a second trial.

*Verdict—Form of—Practice, C. P.*

A landowner agreed to accept stock for land damages. At the trial he agreed that the action should " be tried without objection to form or substance of plaintiff's statement or defendant's plea, that all matter of legal demand and all matters of defence lawfully admissible under any form of pleading shall be admissible as if formally set forth by declaration or plea." The jury returned the following verdict: " We find damages for plaintiff in the sum of five thousand and two hundred dollars, with interest included, payable in capital stock of defendant company at par value." *Held*, that the verdict was in proper form and should be sustained.

Argued April 10, 1893. Appeal, No. 329, Jan. T., 1892, by plaintiff, John W. Hoffman, from judgment of C. P. Columbia Co., Sept. T., 1887, No. 34, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Appeal from report of jury assessing land damages.

At the trial, before IKELER, P. J., it appeared that plaintiff owned a tract of land lying on both sides of Big Fishing creek. The creek was the dividing line between Orange and Mount Pleasant townships. Plaintiff's land on the west side of the creek was a strip about twenty feet wide. On the east side of the creek he owned several dwellings, a barn, a sawmill and a gristmill. Sometime in 1883 plaintiff signed the following written agreement, witnessed by H. J. Conner but not dated:

" I hereby agree in behalf of a railroad to be constructed along the valley of the Big Fishing creek from a point near its mouth and following its general course, to Cole's creek, thence by the most eligible route along the gorge of its eastern branch

into Sullivan county, to connect with the State Line and Sullivan Railroad or to be extended to the state line at or near Waverly.

" That I will release to the company which undertakes to construct such road the right of way of lawful width through my land in Orange township, Columbia county, Penna. The damages to be assessed when the road is located and the amount of said damages to be paid in stock in said railroad. Cost of fencing not included in damages provided no damage is done my buildings, race or water power."

The railroad was constructed in 1886 and 1887 on the east side of the creek. The proceedings were begun in 1887. Plaintiff claimed that at the time the agreement was signed there was a contemporaneous oral agreement that the railroad should be built upon the west side of the creek. Other facts appear by the opinion of the Supreme Court.

Plaintiff made various offers to show the condition of the race before the railroad was finally completed. All of these offers were rejected. [1, 3, 4, 5]

Plaintiff also offered to show the condition of the dam five years after the railroad was constructed. Objected to. Objection overruled and exception. [2]

Plaintiff also offered to show that defendants had placed a large mortgage on their road in fraud of plaintiff, and for the further purpose of showing that the stock was worthless. Rejected and exception. [25]

Various other rulings on evidence are set forth in the opinion of the Supreme Court.

The court charged in part as follows :

" The plaintiff contends that at the time the road was located in 1886–7 his sawmill, dam and water power for the same were in first rate condition for the business for which they were especially adapted—that of custom work and merchant work in the manufacture of flour, chop and lumber ; that the gristmill was especially fitted with machinery which had been repaired and renewed within a year or two prior to that time ; that in constructing their railroad, the defendant company changed the tail race to both gristmill and sawmill, filled up and changed a portion of the headrace and dam which furnished and conducted the water to his mills, entirely stopping for a time—about a

week—his mills; and that the water power to and from his mills by the changes made by the construction of the railroad was so injured and affected that he could not run and operate his mills as he formerly could; that above the headrace the defendant company has built its embankments—upon which the track is laid—over and upon a part of the ground formerly occupied by the water in entering the headrace to his mills, and has thereby changed the force and current of the water leading from the pool of his dam to the headrace; and also that the defendant company, in making a portion of the headrace new, at its mouth or entrance at the dam, lessened its depth and changed its location, and thus diminished the force and flow of the water and choked and retarded and prevented its flow to his mills in the manner it formerly did. [In fact, the plaintiff further contends that the defendant company, by the building of the coffer dam and by the filling up of a portion of the headrace, thereby stopped entirely the flow of water in its accustomed channel to his mills and absolutely destroyed his water power and rendered valueless his sawmill and gristmill; and that what the defendant company subsequently did towards restoring, reconstructing, repairing and rebuilding the race and dam and waterpower upon the lands of the plaintiff outside of the company's defined right of way, cannot be considered by you or set off against the plaintiff's claim for damages in this suit. But, as to this last mentioned contention, we differ with the learned counsel for the plaintiff, and hold that it is a question for your determination under all the evidence and circumstances in the case whether or not the plaintiff consented and agreed to the construction of such works outside of the defined right of way. If you find that he did not, you should so state in your verdict, and thereupon all consideration of such works must be omitted in your estimation of the plaintiff's damages.] [55] [If he did so consent and agree directly with the defendant company or with its agents and employees, or was present when the works were being constructed and knew what was being done and did not dissent, remonstrate or object, but looked on and approved of the work, and subsequently ratified, accepted and used such works in connection with his mills, race and dam and water power, you may consider them in estimating the damages to his whole property, as being connected with the construction

of the road.] [56]  [If he did consent and agree, and if you so find from all the evidence in the case, then such works may be considered as if within the defined right of way, for the purpose of either increasing or diminishing the amount of damages, either as they increase or diminish the market value of his whole property as it was immediately before, compared with what it was immediately after the construction of the road.]" [57]

Plaintiff's points were among others as follows:

" 1. That if the jury believe from all the evidence in this cause that the Hoffman proposal was to be void and of none effect, if defendant should erect its line of railway on the east side of Fishing creek and injure or damage the buildings, race, or water power as they then existed, the assessment of damages in this case should be an assessment in money." Refused. [26]

" 2. That the plaintiff is not bound to accept the work of the defendant in the reconstruction of the water power upon his land, in lieu of damages, without an agreement to such an effect, and without such agreement no works of the defendant outside of its defined right of way can be considered by the jury in mitigation of damages in this case. *Answer:* This point is refused, for the reason that the plaintiff may have subsequently to such construction of works ratified and accepted them as lawfully made; and, if he did, such ratification and acceptance were equivalent to a prior agreement, as stated in our general charge." [27]

" 3. That if the jury believe that, from all the evidence in the case, the defendant company obtained a concession to enter upon the plaintiff's land on condition of refraining from injury to plaintiff's buildings, race, and water power, and violated such condition by the destruction of the water power, as it then existed upon the land, the measure of damages is the value of such water power, together with other damages to the mill and farm property." Refused. [28]

" 5. That if the jury believe from all the evidence, the railroad company in the entry upon the plaintiff's property under the alleged license did not exercise their right in good faith as to the location of their road, and thereby injured the plaintiff's buildings, race, and water power, then the license is forfeited and the plaintiff's damages are payable in money. *Answer:* This point is refused because we do not consider the

evidence in the case with reference to this point alone suffi-- ciently clear, precise and indubitable to warrant us in submit- ting this question to the jury for the purpose of setting aside a written contract, but submit it under our general charge and as stated in answer to the plaintiff's second point." [29]

" 6. That under the alleged license it was the duty of the defendant to have accepted the same within a reasonable time, and to have notified the plaintiff of such acceptance and that such acceptance should have been unconditional and in the same sense in which it was offered, and to have had the damages assessed upon the location of their road and to have tendered the stock at such time in payment of the damages, and if the jury believe from all the evidence the defendant has not done so, they are estopped from setting up such license and its terms in this cause. *Answer:* Taken as a whole this point is refused." [30]

" 7. That there is no evidence in this cause that the defendant company have any stock to tender or that it has any market value or would be in any sense just compensation for plaintiff's property taken by the railroad company or injured by the construction thereof." Refused. [31]

" 8. That there is no evidence in this cause that the defendant company have undertaken or intend to extend its line, or that such line is extended to the point named in the plaintiff's proposal, to wit : to the state line at or near Waverly, and they are estopped from setting up such license in this case until such conditions are shown to be complied with." Refused. [32]

" 9. That the position taken by the president and counsel of defendant company in open court upon the former trial of this cause, as to the assessment of any damages to the buildings, race, and water power, of plaintiff in money, estops them from setting up a different measure of damages in this cause, viz. : the stock of the defendant company, as requested by the defendant in its first point, to wit, ' That if the jury believe that by reason of the new race and new dam provided by defendant, Mr. Hoffman's water power is not damaged ; then under the evidence and the written agreement for right of way, plaintiff can only recover if total value of his property is diminished to that extent, payment to be in capital stock of R. R. Co.' ' Refused. [33]

"10. That if the jury believe the testimony of John W. Hoffman taken in connection with corroborating circumstances, and all the evidence in the cause that the license was given with the understanding that it was to be forfeited upon the erection and construction of the railroad upon the east side of Fishing creek and causing damage to plaintiff's buildings, race and water power, and the defendants have violated the conditions thereof, they are estopped from setting up such license in this cause." Refused. [34]

"11. That if the jury believe from all the evidence that defendant company, in the erection of its said railway, went outside of their line of appropriation and destroyed the plaintiff's dam, and by blasting and otherwise cast in and filled up plaintiff's pool of water, with rocks, stumps, logs and earth and thereby changed the currents of the plaintiff's pool and pool supplies and occasioned irreparable injury to plaintiff, he is entitled to a money assessment for such damages in this suit." Refused. [35]

"12. That the defendant having entered upon the property of plaintiff without making compensation and without giving security for damages under a claim of license, the defendant is required to show a strict compliance with such license in all respects, and particularly with reference to the manner and time of the location and the matter of consideration therein mentioned; and if the jury believe that the defendant did not so comply with the license either as to matter of omission or commission, the license is forfeited by the defendant, and the plaintiff is entitled to recover compensation in like manner as if no license had been given for the injuries occasioned to his property by reason of the location, appropriation for, and construction of the railroad, and that the plaintiff is also entitled to recover compensation for the injuries to his property occasioned by any work upon or interference with the property of the plaintiff outside of the actual appropriation as by the defendant limited and defined. *Answer:* Taken as a whole, this point is refused for reasons given in the general charge and in the answers to the other points." [36]

Defendant's points were as follows:

"1. That the construction of the release agreement of John W. Hoffman witnessed by H. J. Conner is a question of law to be determined by the court. To be determined exclusively

upon the face of the paper itself, unless some question of fact connected with such construction and affecting the same shall be submitted by the court to the jury for their decision. *Answer :* We have already ruled upon that question, and we affirm this point." [37]

"2. That the legal construction of said agreement is as follows: That Hoffman agrees to release to a proposed railroad company undertaking a particular improvement, the right of way through his land, and all the damages sustained by him resulting from the location, construction and lawful operation of the road shall be paid to him in the capital stock of such company at par. The damages to be assessed or valued when the road is laid down or placed upon his land. The term 'located' used in the agreement, judged by the context and the concluding portion of the paper, relates to a time when the question of injury to certain parts of his property and the question of fencing connected therewith can be determined. Lastly the agreement further provides that if no damage shall be done to his buildings, race or water power, the cost to him of fencing caused by the railroad appropriation shall not be included in the damage to be assessed, but if there shall be such injury to buildings, race or water power, then the cost of fencing shall be included in the damages to be paid by the railroad company. *Answer :* That the legal construction of said agreement is as follows : ' That Mr. Hoffman agrees to release to a proposed railroad company undertaking a particular improvement the right of way through his land'—We ought to add here the words 'in Orange township.'"

Mr. Scarlet: We object to any alteration or reformation of the point at this time, unless it is withdrawn and the new point submitted to us.

Mr. Freeze : The words were in the point as originally drawn and have been overlooked in copying.

Court: Restoring these words, we affirm the point. (Reads the rest of the point.) This point is affirmed. [38]

"3. That there is no evidence in this case sufficient to be submitted to the jury of any fraud, mistake or contemporary understanding of the parties qualifying the instrument, by which Hoffman was induced to sign the agreement of release in evidence: The testimony of plaintiff being insufficient for such

purpose, as it is directly contradicted by a witness on the other side who negotiated with him the agreement in question. The paper must therefore stand as against its attempted impeachment or qualification." Affirmed. [39]

" 4. That by the general law of the state relating to railroads, a release or an agreement to release by a landowner the right of way through his land to a railroad company will include all the damages to his property for which legal assessment may be made resulting from the location, construction and proper operation of a railroad line, whether such damage relate to the appropriation of land by the company or result consequentially to other portions of the landowner's property, or from interference therewith by the railroad company, and in this sense the words ' right of way ' in the Hoffman agreement are to be taken and understood." Affirmed. [40]

" 6. In the present case the main ground of complaint by the plaintiff is the change of his headrace for a distance of about 160 feet, by which he claims his mill power is decreased and the working capacity of the mills greatly impaired. As the old and new race at the place of change lie near each other and are partly blended at their entrance, the question assumes the form of an examination of the relative capacities and action of the two channels of water supply, to be determined by the jury upon the evidence. Is the new race as wide, as deep, and as capable of delivering water toward his mill as the old one ? If so and no additional point require consideration, the validity or the invalidity of this ground of complaint and claim can be directly determined upon the evidence relating thereto." Affirmed. [41]

" 7. If the old race was sixteen feet wide and of a depth not exceeding three and one half feet at its entrance and the new race as first constructed was seventeen feet wide at its entrance and of a depth corresponding with the old one, and since then has been greatly widened at that point, the comparison of capacity between must result in the rejection of the plaintiff's complaint unless the new race at lower points is deficient in capacity or otherwise. It is for the jury to determine this question under the instruction of the court upon the evidence, but where the testimony is contradictory the testimony of the engineers as to actual measurements made and recorded by them is much more

relied upon than the testimony of unprofessional witnesses who speak from mere recollection after a lapse of many years." Affirmed. [42]

" 8. Whether the passage of water under the railroad at the lower end of the new part of the race has been, or will be, in the natural course of things, impeded, will also be determined upon the testimony relating thereto, and upon the obvious and proven fact that the water heretofore passing at that point has not required the whole space between the abutments, and has thrown down sedimentary matter upon the side, and particularly upon the east side of its channel. *Answer:* We affirm this point, because we understand that that fact is undisputed in the testimony." [43]

" 10. So likewise if the jury believe the testimony of the president of the railroad company and its superintendent of construction in the spring of 1887, and before work was completed, in reply to complaint made by plaintiff of the insufficiency of the new race, the president of the railroad company replied that the company would make any change necessary or desired at the head of the race, in which proposition plaintiff acquiesced, and thereupon the railroad company did through its proper officer make the enlargement of the race at the point referred to, including the erection of about 90 feet of new dam at large expense, the same being undertaken with plaintiff's knowledge and acquiescence therein as an improvement of his property, he cannot now object that the extension of his race was unauthorized nor that he is entitled to damages therefor, unless he shall show that it was a disadvantage to his property and to be taken into consideration as such by the jury." Affirmed. [44]

" 11. If on the other hand such construction and enlargement of the new race and dam shall be found by the jury to be an element of advantage to the property for purposes of sale, it is to be considered in determining the entire value of the property after the railroad was made." Affirmed. [45]

" 12. If the jury shall believe that the new race at its entrance was upon the same level and in part includes the old and becomes deeper, going downwards to the point of junction with the old race below the crossing, and was of greater width and capacity than the old race, there can be no recovery by the

plaintiff upon the ground that his headrace and water power were injured by the railroad company. For the obligation of the railroad company was that it should not damage plaintiff's property, not that it should undertake to improve it; hence it was under no obligation or duty to the plaintiff to dig a channel in the pool of his dam above the entrance of the new race in order to facilitate the downward movement of the water from the pool of his dam and increase the power of his mills, nor was there any obligation on the railroad company to provide for plaintiff a race of greater depth, width or capacity than the old race." Affirmed. [46]

"13. That the proof given by the railroad company that the deepening of the present race from a point about twenty-five feet above its entrance and one foot in depth, thirteen feet wide at the bottom, can be made down the new race (inclusive of all collateral charges) for the sum of $120, is to be considered by the jury only in case they shall find that the headrace and water power have been injured by the railroad company because of deficient depth or capacity in the new race. For if the plaintiff could have remedied the defect at the entrance of the new race alleged by him by an expenditure not exceeding that sum, it would be unreasonable and unjust to allow him large damages for a cause which would not probably have affected the value of his property for sale to any heavy extent." Affirmed. [47]

The jury returned the following verdict: "$5,200. We find damages for plaintiff in the sum of five thousand and two hundred dollars, with interest included payable in capital stock of defendant company at par value." Judgment was entered thereon. Plaintiff appealed.

*Errors assigned* were (1–25) rulings on evidence, instructions; (64) verdict; quoting bills of exception, evidence, instructions and verdict respectively.

*James Scarlet* and *Charles G. Barkley, L. S. Wintersteen* with them, for appellant.—The verdict is uncertain, not responsive to the issue, inconclusive, and there is no means of compelling its performance: Bruck v. Mansbury, 102 Pa. 35. Except by another suit: Glass v. Blair, 4 Pa. 196. No execution can

issue upon such a judgment: Acts of June 16, 1836, P. L. 774, and April 7, 1870, P. L. 58. Defendant company has no authority to issue such stock: Art. 16, § 7, Const.

A mere offer or promise, not accepted, involves no concurrence of wills and it can never constitute a contract: Bishop on Con., part 321. The acceptance must be communicated to the proposer. An acceptance not communicated to the proposer does not make a contract: Borland v. Guffey, 1. Gr., Pa. 394. An acceptance must be unequivocal, unconditional and without variance from the proposal: Strange v. Crowley, 7 West. R. 106; Bishop, Cont. par. 323; Waterman, Spec. Per., p. 174.

The paper was only admissible, if it was such a contract that a court of equity could enforce specific performance of it: 2 Story, Equity, § 760; Jacobs v. P. & S. R. R., 8 Cush. 223.

Defendant was guilty of laches: Waterman, Spec. Per. 348; Tiernan v. Roland, 15 Pa. 429; Boston & Maine R. R. v. Bartlett, 10 Gray, 384; Stewart v. Morrow, 1 Gr., Pa. 204; Roberts v. Beatty, 2 P. & W. 63; Barr v. Myers, 3 W. & S. 299.

The interpretation of a contract is the ascertaining, not only of its verbal meaning, but also of its legal effect: Bishop, Cont. 367; Waterman, Spec. Per. 158.

Defendant company, having set up a contract, it would have to show an agreement: Oliver v. R. R., 131 Pa. 413; Omaha R. R. v. Janeck, 3. Am. R. R. Cases, note, 268; McKnight v. Ratcliff, 44 Pa. 165; Dark v. Johnston, 55 Pa. 164; Cook v. Stearns, 11 Mass. 533; Miller v. Auburn R. R., 6 Hill, 61; Cooley, Torts, 304; Edelman v. Yeakel, 27 Pa. 30; Hoffman v. R. R., 143 Pa. 516.

It was for the jury to find from the time and manner of acceptance and the acts of the company whether it entered under the contract or under the statute or in defiance of both. It was not a question of construction: Edelman v. Yeakel, 27 Pa. 30.

The location of a railway by survey is a taking and appropriation of the land, although the actual construction is not begun for years afterwards: Pittsburgh V. & C. R. R. v. Com., 101 Pa. 192; Beale v. Pa. R. R., 86 Pa. 509; Heise v. R. R., 62 Pa. 68; Neal v. R. R., 2 Gr., Pa. 138.

Plaintiff was not bound to wait until defendant had committed a new trespass in alleged repair of the injury done. This principle is found in a very old case, Y. B. 6 Ed. IV. 7, pl. 18.

It was the duty of the licensee to refrain from acts willfully injurious. In acting upon the license the licensee was bound to use due care, and do nothing on the land which would be injurious: McKnight v. Ratcliff, 44 Pa. 159; Dark v. Johnston, 55 Pa. 164; Kissecker v. Monn, 36 Pa. 313; Kay v. Pa. R. R., 65 Pa. 272; Edelman v. Yeakel, 27 Pa. 26.

The value of the property was its market value immediately before the diversion of the water and immediately after as affected thereby: Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279; R. R. v. Scully, 16 W. N. 213; McKnight v. Ratcliff, 44 Pa. 165; Bishop, Cont., par. 323.

The time and manner of acceptance were at least mentioned in the proposal in this way. The time when the damages were to be assessed was when the road was located: Cooley, Torts, 304; Lyford v. Putman, 35 N. H. 563.

The evidence was sufficient to show the real character of the agreement between the parties: Phillips v. Meily, 106 Pa. 543; Greenawalt v. Kohne, 85 Pa. 369; Hoopes v. Beale, 90 Pa. 82; Hartley's Ap., 103 Pa. 23; School Furniture Co. v. Warsaw Sch. Dist., 130 Pa. 94.

When on the face of the writing it appears to be incomplete or imperfect as a contract or to embrace only part of the stipulations meant, oral evidence may be introduced in connection with it, and from the two the actual contract determined: Bishop, Cont., par. 175; Thorpe v. Fremont R. R., 3 Am. R. R. & Corp. Cas. 000.

A grant is to receive a reasonable construction which will accord with the intention of the parties, and the court must look at all the circumstances under which it was made: Connery v. Brooke, 73 Pa. 84; McFarson's Ap., 11 Pa. 503.

Defendants having neglected for over four years to pay in stock, it was incumbent on them to show that the value at the time of the proposal or organization was the same in the market: Lewis, Eminent Domain, 462; Demarest v. McKee, 2 Gr., Pa. 248.

A party is not bound to pay for an erection on his land in every way radically defective in view of the purpose for which it was intended, although it may be of some value to him: Bryant v. Stilwell, 24 Pa. 314; Miller v. Phillips, 31 Pa. 218 Barnhill v. Haigh, 53 Pa. 165.

Even where a landowner allows a company to construct a road without remonstrance, he will not be held to have waived his right of action for damages: Lawrence v. Morgan R. R., 30 Am. & Eng. R. R. 309; Harris v. R. R., 141 Pa. 242; Oliver v. Ry., 131 Pa. 408.

To show waiver it was incumbent on defendant company under the rulings of this court in Oliver v. R. R., 131 Pa. 408, and in Unangst's Ap., 55 Pa. 128, to come into court if not with a writing, with full, distinct and unequivocal proof of the waiver it alleges.

*Charles R. Buckalew* and *John G. Freeze, L. E. Waller* with them, for appellee.—In an assessment of damages, where an alleged obstruction of water power exists, defendant may prove the cost to plaintiff of removing the obstruction as a fact to be considered by the jury, in the ascertainment of his damages: Barclay R. R. &. Coal Co. v. Ingham, 36 Pa. 194.

In general, time is not of the essence of the contract unless so declared by the parties, or plainly indicated by attending circumstances: Shaw v. Turnpike Co., 2 P. & W. 454; Hewson v. Paxson, 38 Leg. Int. 308; Barnard v. Lee, 97 Mass. 92; Whitsitt v. Church, 110 Ill. 125; 3 A. & E. Enc. L. 847.

An offer proposing a unilateral contract becomes a binding promise immediately upon the performance of the act requested to be done; and therefore, unless communication to the proposer is one of the things requested, it is not necessary: 3 A. & E. Enc. L. 847; Hare, Contracts, 313; Cooper v. McCrimin, 7 Am. R. 268; Phillips v. Allegheny Car Co., 82 Pa. 368.

It was clearly not competent for plaintiff to enter upon an inquiry as to the market or cash value of stock. By his contract he was to take that stock without reference to its actual or selling value at the time it was received, no stipulation being made that its cash value should be ascertained or regarded at the time of payment: Miller v. Pittsburgh R. R., 40 Pa. 237; Cleveland & Pitts. R. R. v. Speer, 56 Pa. 325.

A landowner having consented to the entry of a railroad company cannot afterwards treat it as a trespasser: Oliver v. R. R., 131 Pa. 408.

The railroad company had a right to accept payment of stock in labor or materials, or in damages which the company was liable to pay: Phila. & Chester R. R. v. Hickman, 28 Pa. 318.

In the present case both the context and the after action of the parties show that in their contemplation the assessment was to be made when the road was actually constructed, and the nature and effect of the work, as made, could be ascertained : Mercer Mining Co. v. McKee's Admr., 77 Pa. 170.

When it is uncertain whether words are used in an enlarged or restricted sense they should be construed most favorably to the covenantee : Paul v. Ins. Co., 112 N. Y. 474 ; Ry. Co. v. Reynolds, 118 Ind. 170 ; Crawen v. Cotton Mill Co., 16 Am. St. 298.

Parol evidence was inadmissible to vary the written agreement : Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 526 ; Cullmans v. Lindsay, 114 Pa. 166 ; Martin v. Berens, 67 Pa. 459 ; Miller v. Smith, 33 Pa. 386 ; Stine v. Sherk, 1 W. & S.195.

Commissioners to take subscriptions of stock, preparatory to the organization of a railroad company, cannot bind the company by parol engagements in connection with, or qualification of, written subscriptions made : Bavington v. R. R., 34 Pa. 358 ; Nippenose Mfg. Co. v. Stadon, 68 Pa. 256 ; Graff v. R. R., 31 Pa. 489 ; McCarty v. R. R., 87 Pa. 332.

Statement by defendant's counsel does not estop defendant from setting up the true construction of the agreement : Dungan v. Ins. Co., 52 Pa. 253 : Eldred v. Hazlett's Admr., 33 Pa. 307 ; Mccough v. Loughery, 37 Leg. Int. 341 ; Wright's Ap., 37 Leg. Int. 170.

OPINION BY MR. JUSTICE THOMPSON, October 2, 1893 :

This action was brought by appellant to recover damages for his land taken by appellee for the right of way of its railroad and for the injury to the water power of his mills in consequence of its construction. The appellee, while contesting the amount of the damages, contended that, when ascertained, they were payable in its capital stock at par, as provided in the agreement made between the parties. By this agreement it is agreed on the part of the appellant as follows, viz.: " I will release to the company which undertakes to construct such road the right of way of lawful width through my land in Orange township, Columbia county, Pennsylvania. The damages to be assessed when the road is located, and the amount of such damages to be paid in stock in said railroad. Cost of fencing not included in

damages, provided no damage is done to the buildings, race or water power." On the former trial the learned trial judge held that this proviso related to the whole agreement and not to the cost of fencing, and if any injury was done to the water power the damages would be in dollars and cents and were payable in cash, but, upon appeal, in reversing, Mr. Justice Green said (143 Pa. 504) : " In the photographic copy of the paper as in the printed copy the word ' cost ' in the final sentence is the beginning of a new and independent sentence disassociated from the one preceding, and it reads : ' Cost of fencing not included in damages, provided no damage is done my buildings, race, or water power.' The clear meaning of these words is that the cost of fencing shall not be included in the damages, if no damage is done to the buildings, race or water power, that is, if no damage is done to the buildings, race or water power no damage is to be allowed for the cost of fencing. This is the natural construction and meaning of the words. But the court below held that the cost of fencing was to be payable in money value and that the words ' provided no damage is done to my buildings, race, or water power ' did not relate to the cost of fencing but did relate to the damages mentioned in the preceding sentence. That sentence is in these words : ' The damage to be assessed when the road is located and the amount to be paid in stock in railroad.' What damage ? Manifestly ' the damages.' All the damages resulting from the location and construction of the railroad through plaintiff's land. This appears by the preceding sentence that " I will release to the company which undertakes to construct such road, the right of way of lawful width through my land in Orange township, Columbia Co., Pa." Immediately following is the provision assessing the damages in the sentence above quoted. Certainly the words ' the damages,' in that sentence, mean all the damages. There is no distinction between damages arising from the taking of the land and those which arise from injury to the buildings, race and water power.' "

The counsel for appellant, with their ingenuity stimulated by a second trial, raise no less than sixty-four assignments of error. They may however be substantially grouped in three classes : (1st) those relating to the measure of damages ; (2d) those relating to the agreement ; and (3d) those relating to the manner of the payment of damages.

The measure of damages is stated in the above opinion to be : " Under the general law all the disadvantages arising from the location and construction of the road are to be taken into account in estimating the value of the whole property before the road was built, and after it was finished." The learned trial judge in his charge followed this rule when he said : " The true and correct rule in estimating damages is the difference in value of the entire property or tract as a whole unaffected, as it was before the railroad was laid upon it, and as it is affected by the railroad after it is finished or completed." The amount of appellant's damages clearly rested upon this basis. In his proof one of the witnesses testified, " that immediately before the construction of the railroad, he considered the market value of the whole property, as a whole, farm and mills, to have a reasonable market value of $12,000, and immediately after the construction of the railroad, as affected by it," that he would " judge it would not be worth over $8,000, at the outside."

The appellant himself testified, " that before the construction of the railroad the market value of the whole property was $12,000 and afterwards $5,000." While on cross-examination he admitted that upon the former trial he had advanced the latter amount considerably. The amount of the verdict indicates very clearly that the jury applied the rule thus laid down to the proof. In view of the testimony that appellant received from the contractor compensation for delay in the operation of his mills during the construction of the coffer dam, the assignments of error for the rejection of evidence to prove the damage arising from it cannot be sustained. Nor those which relate to the rejection of the evidence of the value of the property at an intermediate time and before the completion of the road, because the measure of damages is as stated and is not a shifting one. The admissions of the deposition of U. S. Lutz, of the testimony of M. Shaffer, of evidence as to the leakage of the old dam, as to the cost of deepening and widening the pool and dam, as to repairs to the dam, and the conversation of appellant in regard to the removal of materials in the coffer dam, assigned as error in the various assignments, were proper, because the deposition of Mr. Lutz was offered to show the location and dimensions of the old and new race, because the testimony of Mr. Shaffer related to the construction of the new dam, in the

construction of which it was alleged appellant had acquiesced, and its effect upon the water power, because the leakage was some evidence as to the cause of the weakening of the water power, because the cost of widening and deepening the pool and the dam might be considered by the jury in determining the amount of damages, because the repairs tended to show the condition of the dam before and after the construction of the railroad, and because the conversation of appellant showed that the removals were made with his assent and tended to negative a permanent injury to the water power.

The assignments of error in affirming appellee's sixth, seventh, eighth, tenth and twelfth points must fail, for the reason that substantially questions of fact were thus submitted to the jury to determine whether the enlargement of the race together with the dam was done with the knowledge and acquiescence of appellant, whether the change had materially affected the capacity of the mills and whether the course of the water under the railroad bridge would be impeded. It is manifest these were questions of fact, and in affirming appellee's points were properly submitted to the jury.

The amount of damages thus ascertained, the next question involved in this case, relates to the manner of their payment. In the first trial the appellant's contention was mainly directed to the point that the agreement by reason of the injury to the water power was rescinded and that the appellee had forfeited its rights under it, while that of the appellee, to the payment of damages in stock, except those arising from injury to the water power. Now however, in view of the interpretation placed upon it by this court, they have materially altered their positions. On the one hand appellant denies generally the contract, while on the other the appellee alleges that all the damages are payable in stock. The impeachment of the agreement is pressed upon various grounds. It is contended that there was in fact no agreement made, but merely a proposal, and no notice of its acceptance shown by appellee. The appellant, the owner of two mills (saw and grist), and of a farm, was naturally interested in the construction of a railroad in his immediate neighborhood. This is shown by the testimony of Mr. Jamison, who testified that " he (appellant) always seemed extremely anxious to have the road built and talked a great many times about it,

and about his right of way with me. He said that the people ought to give the right of way up the valley, and nothing ought to be put in the way to prevent the road being built, and he volunteered to assist in getting rights of way from parties who had not released." He referred to this agreement and "frequently talked about his right; was entirely satisfied with it and said that if he was able he would do even more, that he would put in money to build the road if he was able to do it." "He made no objection to the contract at that time." To aid in the accomplishment of this desired object he executed the agreement as a release of the right of way through his lands and not merely as a proposal to be followed by an agreement. Its language clearly establishes this. Its commencement is "I hereby agree;" this is followed by "I will release to the company the right of way, damages to be assessed when the road is located;" then by the manner of their payment. Upon its acceptance by the company it became an agreement binding upon both parties. Whitsitt v. Trustees, 110 Ill. 129. The work upon the road was begun during the winter of 1886 and 1887. In September, 1886, the board of directors of appellee passed a resolution reciting "that the agreements heretofore made and signed by landowners for the right of way along the company's road be ratified and accepted, except any provisions contained in said agreement for the maintenance of fences in the future, and that in case where stock is to be paid for right of way the president shall cause proper certificates of stock to be executed and issued upon releases made." Thus the company placed upon its record a general acceptance of all the agreements for rights of way and made provision for the delivery of the stock when the same were to be paid for with it. The present agreement was with one of such landowners for a right of way, "to be paid for in stock," was covered by this resolution, and is a substantial acceptance of it. The company began its work upon the right of way through his farm and made considerable expenditures of money. It did so in pursuance of the right of way granted by the agreement, without any objection or dissent on the part of the appellant, and was a clear manifestation to appellant that his contract had been accepted by it. It is plain that such work being done in a substantial performance of the contract, was as well defined a notice of ac-

ceptance as one clearly expressed in writing, and is sustained by the rule of the common law " that the fulfillment of that which the promisor stipulates for has always been deemed the best and sufficient proof of assent, and notice need not be given unless the circumstances are such that he cannot inform himself by inquiry: " Hare on Contracts, 313. Such acceptance was not too late by reason of the delay of over three years. No time was specified in the agreement, and, from the nature of the work to be done, the time required to organize the company, and raise the money necessary for the enterprise, it was not intended that it should in any manner be of the essence of the contract. The purpose of the appellant as shown was to secure the building of the railroad, and as soon as the company was in condition to build, it was contemplated that it should then enter upon the right of way thus granted. No time was designated for acceptance and a reasonable time was intended. Time does not become of the essence of a contract unless so declared or indicated by the circumstances: Shaw v. Turnpike Co., 2 P. & W. 454; Hewson v. Paxson, 38 Leg. Int. 308; Barnard v. Lee, 97 Mass. 92. The delay under the circumstances of this case was not unreasonable, and it does not appear by the evidence that appellant himself so treated or considered it. But it is contended that the damages were assessable upon the location of the road, and that the failure on the part of the appellee to assess them at that time operated as a rescission of the contract. Ordinarily the right to damages arises upon the location of a railroad, and the amount to be recovered may include those caused by the location and the subsequent construction, and is so recoverable in but one action: Wadhams v. Lackawanna and Bloomsburg R. R. Co., 42 Pa. 309; Commonwealth v. Pittsburgh R. R. Co., 101 Pa. 196. This agreement by its terms provides for damages ascertainable upon construction. Mr. Justice GREEN so holds in his opinion when, in speaking of the damages, he says: " Manifestly the damages, all resulting from the location and construction of the railroad through plaintiff's land." The injury to the water power was not ascertainable until the construction of the railroad, and its extent depended mainly upon the manner of it. The mass of appellant's testimony related to damages which would not have been ascertainable upon the location, and only became so upon

the construction of the road.  It is plain in the use of the word
"located" construction was intended to be the time for the assessment of damages.  No action was taken for an assessment
until May, 1887, when appellant filed his petition for the appointment of viewers.  Prior to this he had an interview with
the president of appellee's company when he made a claim for
a specified sum for damages, which was refused, and when a
proposition was made to appoint appraisers he desired to consult counsel in regard to it.  In view of the fact that the amount
of damages from their nature could not be ascertained at the
time of the location of the road, and also that the agreement
related to such as necessarily would arise from the manner of
its construction, it is clear that the word located was not used
in the technical sense as a final line duly adopted by the board
of directors of appellee, but as a railroad located and constructed
upon the land, and therefore there was no such delay in the assessment of damages as would operate as a rescission of the contract, or a forfeiture of the rights of the appellee under the
same.

The appellant further contended at the time of the execution
of the agreement, it was agreed that the railroad should be constructed on the west side of the creek and that this collateral
parol agreement induced its execution; that by reason of the
construction on the east side of the creek it was void, and he
became therefore entitled to the payment of damages in money.
Where a written contract plainly expresses the deliberate intent
of the parties, without any uncertainty, and indicates thus the
whole engagement, it cannot be contradicted or varied by parol
testimony, except in certain well defined instances which are
stated by Mr. Justice PAXSON in Phillips v. Meily, 106 Pa.
536, to be : "First, where there was fraud, accident or mistake
in the creation of the instrument itself; second, where there
has been an attempt to make a fraudulent use of the instrument
in violation of a promise or agreement made at the time the
instrument was signed, and without which it would not have
been executed."  These exceptions, because of the significance
of the writing in defining with certainty the engagements of
the parties, require, in order to be established, proof of a clear,
indubitable and precise character.  In Thorne v. Warfflein, 100
Pa. 519, it is said: "It is not enough that there are parol stip-

ulations contradictory of a written agreement in order to change its legal effect. There must be fraud, accident or mistake, and the evidence of either must be clear, precise and indubitable," and in Martin v. Berens, 67 Pa. 459, "the evidence of fraud or mistake ought to be of what occurred at the execution of the agreement, and should be clear, precise and indubitable, otherwise it should be withdrawn from the jury."

As the proof here was not of this character the learned trial judge properly withdrew it from the jury. The appellant, the only witness upon this subject in his own behalf, testified that when the paper was signed the understanding was the railroad was to be on the west side of the creek. He said : " I don't know that the words were put in on this side of the creek but that was the agreement between us. Then he signed it. That was all of the conversation. The agreement was that he was not to come on the east side of the creek." The object of this proof was to modify the agreement almost to the extent of a substitution of a new one. The west side of the creek where the appellant owned a narrow strip of land of the width as stated of two rods insufficient for the statutory width of the right of way designated in the agreement as " lawful width " is in Mount Pleasant township, while the east side of it where the mills, buildings and farms are is in Orange township. The agreement specifically states " through my lands in Orange township " (that is on the east side), and makes a provision in regard to damage to buildings, race, or water power which were on the east side. An agreement thus clear, certain and specific should not be permitted to be contradicted or varied, as claimed, upon the uncorroborated testimony of appellant. To hold so would be practically to sweep away written contracts, destroy their value and substitute in lieu of them loose conversations and verbal understandings.

In North and West Branch Railway Co. v. Swank, 105 Pa. 561, it is said : " Swank was the only witness who testified in support of the alleged ' representations or misrepresentations ' which, if established, change the terms of the written contract, or, as submitted, actually set it aside. His testimony is uncorroborated—the allegation is denied by the other party and some testimony adduced of its untruth. Were the defendant in error in a court of equity, asking that the contract be reformed or

set aside, by reason of the alleged fraud, and the allegation denied, upon such testimony as adduced here, his bill would be at once dismissed. His testimony could not be considered by the chancellor, unless corroborated by another witness, or the equivalent of another. Unless there be such testimony as a chancellor could consider on a question of this nature, it ought not to be submitted to a jury in a proceeding at law."

In Pennsylvania Railroad Company v. Shay, 82 Pa. 198, it is said : " It has been more than once held that it is error to submit a question of fraud to the jury upon slight parol evidence to overturn a written instrument. The evidence of fraud must be clear, precise and indubitable, otherwise it should be withdrawn from the jury."

In Thorne v. Warfflein, supra, it is said : " We have gone very far in permitting parol contemporaneous evidence to defeat written instruments. To go further would be practically to abrogate the rule. The distinctions are fully and clearly set forth in the opinion of Mr. Justice WILLIAMS, in the case of Martin v. Berens, supra, and as there stated they meet with our approval. He sums up the subject in the following terse and effective words, to which we agree : ' Where parties without any fraud or mistake have deliberately put their engagements in writing, the law declares the writing to be not only the best but the only evidence of their agreement, and we are not disposed to relax the rule. It has been found to be a wholesome one, and now that parties are allowed to testify in their own behalf, the necessity of adhering strictly to it is all the more imperative.' We cannot agree that it is proper to throw the whole case into the jury box on the ground of fraud, simply because one of two parties to a written contract testifies that there were parol stipulations contradictory to the terms of the writing agreed to at the same time."

While appellant was uncorroborated he was in point of fact contradicted by Mr. Conner, the other person living who was present at the execution of the paper. He testifies positively there was no agreement " not to come on the east side of the creek." With the appellant's testimony uncorroborated and in fact contradicted there was no evidence to be submitted to the jury to vary or contradict the agreement. As it is not impeachable, with its damages assessable after the construction

of the railroad, as the appellee entered upon the right of way in pursuance of it and performed its part in good faith as required by it and not in the exercise of a right of eminent domain, and as no bad faith has been shown, the group of assignments of error which relate to these subjects are not sustained.

The agreement provides that the damages shall be paid " in stock in said railroad." The par value of the stock was $50.00 per share. A subscriber to the stock of a railroad company takes it at its par value. A secret agreement, with an agent obtaining the same, to pay less would not be enforceable : Miller v. R. R., 87 Pa. 95. When therefore this agreement provides that the appellant shall take stock in the company for his damages, it clearly means that he is to take it, as others take it, at its par value. A definite and fixed value was thus intended, and not a varying one depending upon the changes of the market as to value.

But it is contended that the damages for injury to the water power were payable in money, because, on the former trial, one of its counsel having made an admission to that effect, the appellee is estopped from denying it. In the former trial the contention in regard to the agreement was to a great extent one of construction. The interpretation of it has been finally determined by this court. An erroneous admission in regard to it by counsel upon a former trial as a matter of law will not estop his client from denying it in a second trial : Hill v. Epley, 31 Pa. 331 ; Dungan v. Ins. Co., 52 Pa. 253. An equitable estoppel by matter in pais rests upon the basis of refusal to permit a party to assert what his previous conduct had denied, where another had acted on the faith of such denial and altered his condition. The position of the appellant has no such support. During the trial and subsequently he neither accepted nor acted upon it; he was not by reason of it induced to change his position nor was he misled by it. Having fixed his course by his own compass, he continued in it without deviation. It may in fact be said that here the essential elements of estoppel as stated in Eldred v. Hazlett, 33 Pa. 307, are lacking, and therefore this assignment of error cannot be sustained, nor can it be as corroborative of appellant's testimony, because the admission relative to damages to the water power on the

east side of the creek was but an expression of an opinion upon the construction of the written agreement, relative to damages to the water power, and was not evidence corroborative of that portion of his testimony relative to his allegation of a parol agreement making it void, if the railroad should be built upon the east side of the creek.

The appellant agreed to receive in payment for his damages stock at par without regard to its market value, and the evidence of such value, as well as to the mortgages placed upon the railroad tending to affect its value, was properly excluded. It may be the stock may not be valuable at the present time, and as a consequence the appellant may suffer a hardship. But having by his contract made the law governing the case, he is alone the cause of it. It is not the first instance where the value of a contract has been miscalculated. As the damages were payable in stock the verdict was directed to be in stock and was rendered accordingly. This is assigned as error because the verdict is unresponsive to the issue and is not enforceable. As counsel, by an agreement, in writing filed, "that this action be tried without objection to form or substance of plaintiff's statement or defendant's plea, that all matters of legal demand and all matters of defence lawfully admissible under any form of pleading shall be admissible as if formally set forth by declaration or plea," broadened the issue to all matters in controversy, the verdict is clearly responsive and its performance can be enforced. Under its equitable powers the court can by the control of its execution enforce it. In the case of Pierce v. Marple, 148 Pa. 69, where the contract was to pay in lime, Chief Justice PAXSON said : " We are of the opinion that the evidence referred to should have been received, and if the jury found the plaintiffs were to take their pay in lime such fact should have been found specially and incorporated in the verdict. The court would have then been enabled to control the execution, and if defendants should refuse to pay in lime could permit the execution to go for money." The verdict is for damages for plaintiff for $5,200, with interest payable in capital stock of defendant, and is thus for a specific sum to be paid in stock ; and if not so paid execution may be issued for the money. It differs essentially from Bruck v. Mausbury, 102 Pa. 35, where a verdict was " in favor

of plaintiff for $246, and plaintiff to complete job according to contract, and from Glass v. Blair, 4 Barr, 196, where it was for defendant and the plaintiff to receive back the machine."

As the assignments of error are not sustained this judgment is affirmed.