## WAGNER v MENKE

Ohio Appeals, 2nd Dist, Darke Co

No 486. Decided June 19, 1935

Murphy & Staley, Greenville, for plaintiff in error.

Billingsley & Manix, Greenville, for defendant in error.

## OPINION

By BARNES, PJ.

The petition in error sets out twelve separate specifications of error. In the brief of counsel for plaintiff in error these are reclassified and special stress is given to specifications 8, 9 and 10.

Specification No. 8 is based on claimed error in the refusal of the court to give special instructions numbers 2, 3, 4 and 5 before argument.

Specification No. 9 is based on the refusal of the court to incorporate in its charge a request made by the plaintiff on the question of construing the contract.

Specification No. 10 relates to claimed error in the charge of the court.

## OPINION

By BARNES, PJ.

Throughout the trial and in the argument as presented in the brief it is recognized that the written contract demands a construction as to the time of performance. On this subject the contract says: "At any time that he may want to sell it."

There is no ambiguity in this language, notwithstanding it is debatable as to whether or not under its terms it was absolute and perpetual, or does the law imply, under such provision, that plaintiff must make demand for performance within a reasonable time?

It is a well recognized principle of law that where time is not specified and the contract being enforceable, the law implies reasonable time as a constituent part of the contract. This principle of law has been very frequently announced in cases where there is no mention of time. The query arises and has given us much concern as to whether or not the words "at any time" are a sufficient specification of time of performance so as to distinguish it from a line of cases wherein the courts say reasonable time is implied in the contract."

Counsel for plaintiff submitted special requests before argument on both theories. Request No. 5 was given and therein the jury were instructed that the time of performance was a reasonable time. ...

Request No. 6 was predicated upon the theory that the contract between the parties was absolute and did not admit of the injection into the agreement of any ques-

tion of whether or not plaintiff's demand for performance was made within a reasonable time. The court refused to give special request No. 6.

Counsel for defendant in error, in support of their theory that the contract implied demand for performance within a reasonable time, cite the following cases:

Hartman v Gorrell et, 7 Oh Ap, 318;

Sprague v Munger, 17 C.C. (N.S.), 130;

Davis Laundry & Cleaning Co. v Whitmer, 92 Oh St, 44;

Ohio Jurisprudence, Volume 10, pages 411, 419 and 420;

Ashley, Jr. v Walker, 15 C.C., 660.

We have examined each and all of these cases.

The first case cited, 7 Oh Ap, 318, supports the general proposition that where time is not specified for the exercise of the option, the law implies reasonable time.

In none of the Ohio cases cited, nor do we find any in this state, where the language of the contract contained a provision as in the instant case "at any time."

This situation compels us to examine text books, digests and decisions of courts of last resort in other jurisdictions.

The case of Moench v Hower, 137 Iowa, 621 (115 NW, 229), is very illuminating and helpful. In the reported case the plaintiff, Moench, applied to the Ryan Implement and Hardware Company, of which Hower was president, for a position. During the negotiations it was proposed that the plaintiff take ten shares of the stock of the company at the par value of $1000.00, which he did. At the same time he received, as security, the following contract:

"Fort Dodge, Iowa, March 12, 1903.

I hereby agree that at any time after six months from this date that Gustav Moench should want to withdraw his stock from the Ryan Implement & Hardware Company to take it off his hands at 100 cents on the dollar by giving him thirty days notice. (Signed)· Andrew Hower."

The plaintiff worked for the company until March, 1905, and then owing to a difference as to wages which he received, quit and on the 17th day of that month served notice on the defendant, tendering to him the shares of stock of the company and demanding payment therefor at 100 cents on the dollar, within thirty days. Defendant refused to take the stock and suit was begun on the contract. Among other defenses, the defendant pleaded want of consideration, indefiniteness as to time of performance, failure to act within a reason-

able time and estoppel from demanding payment for the reason that the stock had become worthless. Plaintiff recovered in the trial court and this was affirmed in the reviewing court.

In this case there is no divergence from the general principle that time of performance not being specifically set out, the law implies a reasonable time, but we do find running through the case an emphasis on the circumstances and situations surrounding the parties at the time of the execution of the contract as an aid in determining what would constitute a reasonable time.

On page 230 of the opinion (115 NW) we find the following:

"What is a reasonable time must of necessity depend upon the circumstances of each case. Plaintiff would be likely to be content· to leave this money in the stock while employed by the company. This might reasonably have been contemplated by both parties, and that when he ceased to be an employee, he would naturally look elsewhere for investment. In these circumstances, a delay of eighteen months can not be said to be unreasonable. See Fitzpatrick v Woodruff, supra; Hoffman v Ry. Co., 157 Pa., 174, 27' Atl., 564. The stock in the company had depreciated greatly in the meantime, and possibly was then worthless, but the object of this contract was to furnish plaintiff security against· just such a contingency. There is no showing of bad faith on his part and to plead estoppel is without support in evidence."

We also quote at length from the case of Grace Securities Corporation v Roberts, (Va.) 164 SE, page 700:

"Syllabus 7. Expression 'at any time' as used in corporation's contract to repurchase its stock at any time, held to mean reasonable time. (Ed. Note—For other definitions of 'At any time' see Words and Phrases)."

"On September 21, 1927, at the office of the defendant, The Grace Securities Corporation, in the city of Richmond, the plaintiff was induced by Mr. Oscar E. Parrish, at that time its senior executive and active vice president, to buy sixty shares of stock in the corporation at $44.25 per share, with the written assurance that the corporation would repurchase the same at any time she desired to sell. Dividends were duly paid on the stock during the years 1927, 1928 and the first six months of 1929. Sometime during that year, and after the October dividend was passed, the· offering price of the stock was $15, and bid $8, per share. On

December 2 the plaintiff demanded that the defendant repurchase the sixty shares in accordance with its promise. The demand was refused, and this action followed."

On page 704 of the opinion we find the following:

"The expression 'at any time' used in the contract, really means a reasonable time. What is a reasonable time in which to exercise an option based upon valuable consideration depends upon the facts and circumstances of each particular case. There are only three facts shown by the record which throw any light on the subject: i.e.: (1) That the plaintiff refused to buy until the promise to repurchase was made; (2) the language of the promise itself; (3) that about the time the plaintiff elected to exercise her option to sell the market value of the stock had depreciated."

"The plaintiff was not willing to make the investment and assume the risk of a decline in the selling price of the stock. She knew nothing of how the corporate property was managed or of the possible profits from its various undertakings. She knew that these were all matters within the peculiar knowledge of the defendant, and that with this knowledge it agreed to assume this risk. The selling price of the stock declined within two years. The plaintiff thereupon exercised the right given her by demanding that the defendant perform its obligation. The defendant is now seeking to escape this obligation on the ground that the plaintiff failed to act in time. Nothing was said or done at the time of the sale, or prior to the time the plaintiff made her demand, which would indicate that either party intended for the option to be exercised promptly. The defendant, at the time it made the promise, did not see fit to require the plaintiff to exercise the right given her within any stated time. Simply because the stock declined in price within two years is not sufficient for us to hold as a matter of law, that a reasonable time has expired."

Citing Vickrey v Maier, 164 Cal., 383, 129 Pac., 273, 274.

Kaplan v Reid Bros., 104 Cal., App., 268, 285 Pac., 868-869.

"Held, that plaintiff was entitled to recover."

We also cite the following cases wherein the court dealt with the term "at any time."

Vickery et v Maier et, (Cal.) 129 Pac., 273; Kaplan v Reid Bros., (Cal.) 255 Pac., 868;

Brooks v Trustee Co., (Wash.) 50 L.R.A., N.S., 594; 136 Pac., 1152;

Parks v Whitney, 148 Mass., 278 (19 NE, 161).

Also see Words and Phrases.

Applying these principles to the instant case, the greatest latitude should have been given in developing the surrounding situations and conditions attending the negotiations for a consummation of the contract wherein was contained a provision for sale "at any time." In a transaction where parties deal at arm's length and no other element enters into the case, then the purchase and sale of the commodity, a provision to repurchase at any time would require quicker action than would a contract containing the same clause "at any time" where the surrounding conditions and circumstances attending the execution of the contract present an element which requires a determination that reasonable time is extended beyond what it otherwise would be.

For instance, in the reported case of Moench v Hower, 115 NW, supra, the court called attention to the fact that the chief consideration for the purchase of the stock was the employment of the purchaser and hence this would be an element to consider in determining what would be a reasonable time. The statement is made that under such conditions the purchaser would be likely to be content to leave his money in the stock during his employment and that this might reasonably be contemplated by both parties. Of course, when his employment ceased he would naturally look elsewhere for investment. In the reported case the question of reasonable time was determined in the light of this surrounding circumstance.

In the instant case we think that there was prejudicial error by the trial court in rejecting testimony offered by the plaintiff. Counsel for plaintiff sought to present evidence of the conversations and surrounding conditions attending the execution of the written contract upon which the present action is based. Objection was made and sustained by the court, upon the theory that the contract, being in writing and not ambiguous, all previous conversations would be merged in the written contract. The court was right in its determination that a contract may not be altered by parol testimony and, further, that after a contract is reduced to writing, all negotiations preceding are merged in the writing and are not admissible in evidence to change the terms of the contract. This general rule, like many others, has its exceptions. The one exception most invoked is where

there is an ambiguity in the written contract. The second exception arises under the peculiar facts of this case. While there is no ambiguity in the language, there is the necessity to determine the question as to what is a reasonable time under the language of the contract. While it is true the words "at any time" will not be given literal construction which would give the right to exercise option in perpetuity, Kaplan v Reid Bros., 285 Pac. (Cal.) 868, the authorities universally hold that under such a provision in a contract it is helpful in determining what is reasonable time to ascertain, if possible, what the parties had in mind when the contract was executed. This can only be ascertained through the fullest narrative of the negotiations which finally culminated in the written contract. The defendant wrote the document and the phrase "at any time" is his language.

A literal construction would mean a right to exercise option in perpetuity. The courts have said that they will not adopt a literal construction but will limit the phrase to a reasonable time.

The rule of reason demands that if possible we ascertain what the parties had in contemplation. This can only be accomplished through evidence of all the surrounding facts and circumstances attending the execution of the written contract. On pages 17 and 18 of the record, in the cross examination of Joseph Menke, counsel for plaintiff was inquiring as to the solicitation by Menke to have Wagner purchase stock so that he might go on the board of directors. The objection to this testimony was sustained and plaintiff made offer of proof. Again, at pages 26 and 27, during the examination of the plaintiff, Mr. Wagner, on objection the witness was prohibited from presenting testimony as to conversations that transpired prior to the execution of the contract. On page 27, Mr. Murphy, of counsel for plaintiff, disclosed to the court the purpose of this inquiry in the following statement:

"Not to add any terms to the agreement; by the way of shedding light on the transaction, or vital to the question of reasonableness that Mr. Billingsley stressed a while ago."

On page 36 the following appears: Mr. Wagner, on direct examination, in answer to question put by his counsel, gave the following answer:

"When they asked me to buy this stock I said I couldn't afford it. We had a son in college. We were some little in debt on the farm yet. Of course I said I couldn't afford to buy this stock. It was all new to me, and they insisted that I be appointed as a director and said it would help out. They said they would agree to take the stock at any time that I cared to sell it, which would be some inducement for me to purchase it."

On motion the answer was stricken out. We think this evidence was competent and should not have been ruled out.

In line with the above cited case, it might properly be held that if the chief moving consideration for opening up the negotiations which finally culminated in the written contract was to procure Mr. Wagner as a member of the board of directors, then it could be further reasoned that in contemplation of the parties the offer to repurchase was a continuing one so long as he remained on the board. If that was the consideration that motivated the officers of the bank to desire Mr. Wagner to be on the board of directors, the procurement of the stock would be incident thereto, since under the law no one could be a director unless he was the owner of ten shares of stock.

Such a construction would be in full accord with the reported cases in other jurisdictions where similar language is used in a contract.

It necessarily precludes the literal construction of perpetuity. It would adopt the rule of reason that reasonable time is not measured by hours, or days, or weeks, or months, or years, but is to be determined from the surrounding conditions and circumstances through which the reasonable time is to be determined and which the parties had in contemplation in entering into their contract.

It would preclude the idea of perpetuity for the reason that because of certainty of death it would prevent perpetuity. Furthermore, a director of a bank is elected and whenever his services are not satisfactory or a new personnel comes in as officers or stockholders, the services of director may be terminated.

The part of the contract wherein Mr. Wagner agreed that he would not sell the stock to anyone else adds color to this line of reasoning. It might indicate that the stock was closely held and only disposed of to Mr. Wagner in order to carry out a plan of having him on the board as a director. This last clause was possibly intended to meet the contingency that if his services were terminated as a director, either by vote of the stockholders, resignation,

death or any cause, that it would not pass through Mr. Wagner to outside ownership.

If the facts were undisputed in line with the proffered evidence we would be inclined to hold that plaintiff acted within a reasonable time as a matter of law.

This we can not do under the state of the record, for the reason that the court excluded testimony and thereby left nothing for the defendant to meet relative to the surrounding facts and conditions attending the execution of the written contract. The rule of law is well recognized that if the facts are in dispute, there arises a jury question; if not in dispute, the determination of what would be a reasonable time would be for the court.

The case apparently was tried upon the theory that there was also present the issue of consideration. Since the case is to be re-tried, we will say that under the state of the present record consideration appears as a matter of law and the court can properly so say to the jury. Each and all of the Ohio cases cited at an earlier page of this opinion so hold.

Very briefly we would say that we do not think the trial court was in error in refusing to give before argument special instructions 2, 3, 4 and 6. We think request No. 2 improperly injected the question of a favorable market since there was no evidence of plaintiff's desire or attempt to sell during the short period that the market was more than $350.00 per share.

Request No. 3 improperly injected into the definition of reasonable time the action of a reasonably prudent mind. We fail to understand that prudence is an element in determining reasonable time.

Special request No. 4 was a composite of 2 and 3, and objectionable for the above reasons.

Request No. 6 was properly refused for the reason that it invoked the rule of perpetuity.

Plaintiff's request to further charge the jury in effect that the contract should be construed most strictly against the scrivener, was not proper in the form submitted. This principle of law applies where there is an ambiguity or uncertainty. Under certain evidence presented by defendants we can see where this might be proper in the instant case in a somewhat modified form.

Upon a retrial if there be a dispute so that the court may not determine the action of reasonable time as a matter of law, we think it would be helpful to the jury for the court to give a more complete exposition of the elements which would be proper to consider in determining whether or not plaintiff exercised his option within a reasonable time.

Under the state of the present record, in connection with the proffered testimony, we do not think the element of depreciation of stock was proper in the court's charge. If, in a new trial, the facts presented bring a situation comparable with the reported cases wherein the element of decline in the market was considered, then the court could properly follow such rule.

The question raised by counsel for plaintiff that the court erred in not adequately and fully defining the term "reasonable time," under the Ohio rule can not be held prejudicial. This would be an act of omission and the authorities hold that counsel, under such a situation, can only protect his record by proffering a proper charge covering the elements sought to be elucidated.

For the reasons announced, the judgment of the court below will be reversed and the cause remanded for retrial.

Exceptions will be allowed to the defendant in error.

HORNBECK and BODEY, JJ, concur.