TURNER BROOKS OF OHIO, INC. *v.* BOWLING GREEN STATE UNIVERSITY.

(No. 88-04881—Decided September 25, 1989.)

Court of Claims of Ohio.

*Stuart J. Goldberg,* for plaintiff.
*Anthony J. Celebrezze, Jr.,* attorney general, and *Eric A. Walker,* for defendant.

SHOEMAKER, J. In 1986, plaintiff, Turner Brooks of Ohio, Inc. ("Turner Brooks") entered into a joint venture with F. L. Barron, Inc., doing business as Carpetalk. The purpose of the joint venture was to perform interior refurbishing work for defendant Bowling Green State University.

The members of the joint venture entered into contractual arrangements with defendant for work to be performed at two student housing facilities located on the campus of defendant. A dispute arose between the parties regarding plaintiff's performance, which precipitated the filing of plain-

tiff's complaint and defendant's counterclaim. On July 7, 1987, Carpetalk assigned to plaintiff the totality of its rights, title and interest in this contractual arrangement with defendant. Thus, the sole plaintiff hereinafter is Turner Brooks, which initiated the present causes of action on April 25, 1988. On June 26, 1989, this matter came on for trial concerning the issues of liability and damages. The court has duly considered the evidence and arguments presented and renders the following findings and conclusions.

Plaintiff's complaint against defendant consists of two counts. An examination of these counts must begin with a recitation of the relevant factual background regarding this case. In late March 1986, defendant circulated request for bid No. 8456 to obtain carpet installation in student rooms, corridors and public areas of Conklin West, a student housing facility on defendant's campus. This request for bid contained a completion date of August 1, 1986. Defendant subsequently cancelled this bid request.

On June 2, 1986, request for bid No. 8581 was dispersed for the Conklin West carpet installation project. This request did not contain a completion date. On or about June 9, 1986, plaintiff submitted to defendant a bid proposal, which was an offer to perform the Conklin West carpet installation. On June 19, 1986, plaintiff was telephonically notified by a representative of defendant that plaintiff would be performing the carpet installation work. On June 20, 1986, defendant's purchase order No. 27282 was forwarded to plaintiff. This purchase order was an acceptance of plaintiff's offer to perform the installation. Relying upon this purchase order, plaintiff immediately placed an order for carpet to be installed at Conklin West. Customarily, the receipt of the carpet ordered will occur within six to eight weeks. In this case plaintiff received the carpet on July 29, 1986, five weeks after the order. Plaintiff timely commenced work at the Conklin West project on July 30, 1986,

During the installation of the carpet at Conklin West, plaintiff incurred additional expenses due to an abnormal floor surface which was undetectable upon visual inspection. The floor had deteriorated, leaving an uneven surface which required the application of a smoothing compound of thin concrete to level the surface. As a result of this unforeseen labor, plaintiff incurred an additional expense of $3,534. Plaintiff completed the Conklin West project on or about August 22, 1986. Defendant withheld $7,708.69 from the contract proceeds as a setoff for custodial overtime purportedly incurred from plaintiff's alleged delay in completion. Furthermore, defendant refused to compensate plaintiff $960, representing necessary overtime costs incurred by plaintiff at the Conklin West facility.

Count two of plaintiff's complaint concerns the following factual scenario. On May 5, 1986, defendant released request for bid No. 8480-B concerning the furnishing of material, equipment and labor to supply and install carpet and wall base in the Delta Sigma Theta ("Delta") housing facility. This bid request stipulated a completion date of July 25, 1986. Plaintiff submitted its offer to perform the Delta work on May 15, 1986 by forwarding a bid proposal to defendant. On July 5, 1986, defendant sent plaintiff purchase order No. 26922, which the court finds was an acceptance of plaintiff's offer. Plaintiff's second claim is premised upon unreimbursed overtime expenses of $932 from the Delta project.

The initial issue to consider regarding the Conklin West project is to

determine whether a binding completion date was expressed in the contract. Request for bid No. 8581, as previously discussed, as agreed to by the parties, represents the contract for the installation of carpet at Conklin West. After reviewing said contract and considering the testimony at trial regarding the contract, the court finds that there is neither an express nor an implied completion date contained in the agreement. Defendant suggested that the August 1, 1986 completion date specified in request for bid No. 8456, which was cancelled by defendant, was binding upon the plaintiff. The court finds this argument devoid of merit as it is clear that defendant either inadvertently or purposefully failed to insert a completion date into the contract for the Conklin West project and the plaintiff cannot fairly be bound by a prior rescinded bid solicitation.

Considering the purchase order date of June 20, 1986, along with the attendant circumstances, defendant's claim of a good faith belief that an August 1, 1986 completion date was required stretches credulity. To permit defendant to impose such a requirement would allow the defendant to unilaterally alter the material terms of a contract and in the process penalize the plaintiff by binding plaintiff to an unreasonable or impossible completion date. Furthermore, the testimony at trial demonstrated that the plaintiff could expect to receive the carpet between six and eight weeks after said carpet was ordered. This uncontroverted testimony bolsters the conclusion that a completion date of August 1, 1986 was completely unreasonable in light of the surrounding circumstances.

Since the court has concluded that the completion date of said contract was unspecified, the terms of the contract can be classified as indefinite. Ab-sent a specific time for contract compliance, a reasonable time for performance is implied. *Harris* v. *Ohio Oil Co.* (1897), 57 Ohio St. 118, 127, 48 N.E. 502, 505. See, also, 18 Ohio Jurisprudence 3d (1980) 97, 97-98, Contracts, Section 196. Consequently, the court must determine what time span constituted a reasonable time for plaintiff's completion of the Conklin West project. Reasonable time is not measured by hours, days, weeks, months or years, but is derived from the surrounding conditions and circumstances which the parties had in contemplation upon execution of the contract. *Wagner* v. *Menke* (App. 1935), 20 Ohio Law Abs. 501, 505. See, also, 18 Ohio Jurisprudence 3d (1980) 100, Contracts, Section 197.

There is no question that both the plaintiff and defendant knew that this carpet installation project needed to be completed by the time the students at Bowling Green State University returned to commence the fall term. Defendant argues that plaintiff should have known time was of the essence and therefore should have completed the project several weeks prior to the beginning of the fall term. Time of performance is not of the essence in a contract unless made so by its terms, or by act of the parties. *Hubbard* v. *Norton* (1875), 28 Ohio St. 116, paragraph four of the syllabus. See, also, 18 Ohio Jurisprudence 3d (1980) 95, Contracts, Section 195. Since the contract at issue fails to express any such provision, the court concludes that the plaintiff acted reasonably by completing the Conklin West project within six weeks.

Plaintiff, as previously mentioned, started working on this project on or about June 20, 1986, by ordering the carpet. The court finds that plaintiff has proven by a preponderance of the evidence that a period of five to six weeks to complete the Conklin West project was a reasonable length of

time. Since the plaintiff completed the project in a reasonable length of time, defendant's allegation that a delay in performance by plaintiff forced defendant to incur unnecessary custodial overtime expense is unfounded. The defendant should have anticipated that its own delay in awarding a carpet contract for the Conklin West project would necessitate overtime work from custodial employees in order to prepare for the upcoming school year. As such, the court finds that defendant acted improperly by withholding $7,708.69 from the proceeds of the contract. Thus, plaintiff is entitled to a judgment for this amount upon the first claim.

Plaintiff also alleges it incurred additional labor costs associated with extra latex work totalling $3,534 at the Conklin West project. Plaintiff asserts that this work was necessary to properly perform the carpet installation. Defendant failed to offer any evidence challenging the necessity of this latex work. The court finds by a preponderance of the evidence that the extra latex work was necessary for plaintiff's proper performance under the contract. As such, plaintiff is entitled to a judgment in the amount of $3,534.

Plaintiff also alleges it incurred overtime expense in the amount of $960 during installation of the carpet at the Conklin West project and $932 at the Delta Sigma Theta project. Defendant has failed to reimburse plaintiff for said amounts asserting plaintiff did not secure authorization for such work. In *Backus Associates, Inc.* v. *Dept. of Natural Resources* (1976), 47 Ohio Misc. 11, 1 O.O. 3d 211, 352 N.E. 2d 663, paragraph six of the syllabus, Judge Horace W. Troop of the Court of Claims stated the following legal principle: "Contractual provisions regarding change orders and overtime orders must be strictly observed and a contractor must prove

the proper issuance of a change or overtime order and that an authorized person issued such order." Consequently, plaintiff had to demonstrate by the greater weight of the evidence that its employees contacted an agent of defendant possessing the proper authority to approve the overtime expense incurred.

The evidence submitted at trial demonstrated that Ordell Starkey, the installation superintendent of plaintiff, spoke to Lori Smith, a purchasing agent for defendant, regarding the problems on the projects. Defendant and plaintiff disagree as to the authority of Lori Smith concerning alterations of the contract. To settle this dispute the court finds the following legal proposition instructive:

"In order to show agency by estoppel, it must be clearly established that the principal holds the agent out to the public as possessing sufficient authority to embrace the particular act in question or knowingly permits the agent to act as though he has such authority, and that the person dealing with the agent knows the facts and, acting in good faith, has reason to believe, and does believe, that the agent possesses the necessary authority." *Logsdon* v. *ABCO Constr. Co.* (1956), 103 Ohio App. 233, 3 O.O. 2d 289, 141 N.E. 2d 216, paragraph two of syllabus.

The court finds that plaintiff acted in an objectively reasonable fashion and in good faith when assuming that Lori Smith possessed the authority to authorize overtime expenditures in view of her position with defendant and the nature of her interaction with the plaintiff. Furthermore, the court finds, after weighing the testimony offered at trial, that plaintiff contacted agents of defendant's purchasing department before incurring the overtime expense and acted reasonably in assuming it had secured proper au-

thorization. There is no question as to the necessity of this overtime expense as plaintiff and defendant were each aware that both projects had to be completed prior to the arrival of the students for fall term. Therefore, plaintiff shall receive judgments in the amount of $960 and $932, representing the necessarily incurred overtime expenses.

Defendant has filed a counterclaim in this action alleging that plaintiff failed to clean up the areas affected by the carpet installation at both the Conklin West and Delta projects. After reviewing the testimony and evidence submitted at trial, the court does not find sufficient evidence to support defendant's counterclaim, as plaintiff's conduct on these projects was in good faith and efficient considering the circumstances. Consequently, defendant has failed to prove its counterclaim by a preponderance of the evidence.

Therefore, the court concludes that plaintiff has demonstrated by a preponderance of the evidence that its actions were in conformance with the contract and plaintiff should receive full compensation for the work performed. Accordingly, judgment is rendered in favor of plaintiff and against the defendant in the amount of $13,134.69 plus interest as allowed by law. Furthermore, defendant's counterclaim is hereby dismissed.

*Judgment accordingly.*

FRED J. SHOEMAKER, J., retired, of the Court of Common Pleas of Franklin County, sitting by assignment.